**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| DAVE & BUSTER'S, INC.<br>2481 Manana Drive<br>Dallas, Texas 75220 | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NO. _____ |
| WHITE FLINT MALL, LLLP f/k/a<br>WHITE FLINT LIMITED PARTNERSHIP<br>2000 Tower Oaks Boulevard<br>Eighth Floor<br>Rockville, Maryland 20852 | * * * * * * | |
| Defendant. | * * | |
| SERVE:<br>ARTHUR N. FUCCILO<br>2000 Tower Oaks Boulevard<br>Eighth Floor<br>Rockville, Maryland 20852 | * * * * * * | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Dave & Buster's, Inc., ("D&B") files this Complaint against Defendant White

Flint Mall, LLLP, f/k/a White Flint Limited Partnership ("Defendant" or "White Flint") and

alleges as follows:

**PARTIES**

1.      D&B is a Missouri corporation with its principle place of business in Dallas,

Texas.

2.      Defendant, upon information and belief, is a Maryland limited liability limited

partnership with its principle place of business in Rockville, Maryland.

3.       D&B operates "Dave & Buster's" in the White Flint Shopping Center located in Bethesda, Maryland ("Shopping Center").   Dave & Buster's is a restaurant/entertainment complex offering a wide selection of food and beverage items, combined with an extensive array of interactive entertainment attractions.

4.       Defendant owns the Shopping Center.

## JURISDICTION

5.       Jurisdiction is proper pursuant to 28 U.S.C. §1332 as the parties are diverse and the dispute in controversy involves a claim which exceeds $75,000.

## VENUE

6.       Venue is proper under 28 U.S.C. §1391(b) as the events giving rise to the dispute occurred in Montgomery County, Maryland.

## FACTS

**I.      The Lease Agreement**

7.       On or about March 7, 1995, D&B Holding, Inc. ("Holding") entered into a written Lease Agreement ("Lease") with Defendant to lease certain premises in the Shopping Center (the "Leased Premises") to operate its Dave & Buster's restaurant.   A true and correct copy of the Lease is attached hereto as Exhibit A and incorporated herein by reference.

8.       Defendant courted Holding to lease space in the Shopping Center and, through the Lease, expressly acknowledged that the rights and benefits contained therein served as a material inducement to Holding to execute the Lease.   Holding executed the Lease in reliance on those rights and benefits continuing throughout the entire term of the Lease.   (See Section 1.2 of the Lease).

EAST\63060486.1
224074-000032

9.      The Lease provides for a total 35-year term, consisting of an initial term of 20 years with options held by Holding to extend the Lease for an additional 15 years should it so choose.  The initial term expires on January 31, 2017.  The three successive renewal options extend the term of the Lease until January 31, 2032.  (See Section 3.1 of the Lease.)

10.     Following the execution of the Lease, Holding spent significant time and money building out the Leased Premises.  Thereafter, Holding moved into the Leased Premises and began operating in full compliance with its obligations under the Lease.

11.     Subsequently, in or around 1996, Holding was merged into D&B and, pursuant to Section 12.1 of the Lease, all of Holding's rights and interest in and to the Lease were assigned to D&B.

## II.    Defendant's 2006 Claim That D&B Breached The Lease

12.     On April 13, 2006, Defendant, through its managing agent Lerner Corporation, alleged that D&B had breached the Lease by and through its 2004 acquisition and subsequent re-branding of a restaurant named Jillian's located in the Arundel Mills Mall in Hanover, Maryland.  Specifically, after acquiring Jillian's, D&B re-branded the restaurant in 2005 as "Dave and Buster's Grand Sports Café."  Defendant claimed that D&B breached a "radius restriction clause" found in Section 11.3 of the Lease by virtue of the acquisition and/or re-branding of Jillian's.  (See April 13, 2006 correspondence attached hereto as Exhibit B.)  D&B disagreed.

13.     After alleging that a breach had occurred in 2006, Defendant failed and refused to take any further action for well over six years.  D&B continued to operate the re-branded Jillian's in the Arundel Mills Mall and does so to this day.

3

14.     In 2012, however, in conjunction with its effort to increase vacancy at the Shopping Center to facilitate a redevelopment, Defendant abruptly changed course and decided to resurrect its 2006 claim that D&B had breached the Lease.

**III.     Defendant Reasserts The Same Alleged Breach, Based On The Same Alleged Facts, This Time In 2012 In Connection With Its Planned Redevelopment Of The Shopping Center**

15.     In or around 2012, Defendant submitted a redevelopment plan to Montgomery County seeking to significantly redevelop the Shopping Center.  Specifically, Defendant plans to demolish a significant portion, if not all of the Shopping Center which includes, but is not limited to, parking facilities used by D&B customers.

16.     In furtherance of its redevelopment plans, Defendant, upon information and belief, proceeded to negotiate with other tenants in the Shopping Center to terminate their leases so that existing tenants would vacate the Shopping Center.

17.     Some tenants have left the Shopping Center while others, such as Lord & Taylor, have remained open, and plan to remain open during the redevelopment.

18.     As part of its efforts to terminate D&B's Lease, in or around September 2012, Defendant resurrected its same 2006 claim that D&B breached Section 11.3 of the Lease based on the same 2004 transaction -- D&B's acquisition and subsequent re-branding of Jillian's in the Arundel Mills Mall.  Defendant reasserted the alleged breach in an attempt to terminate the Lease so that Defendant could avoid both its obligations and D&B's rights under the Lease, and any resultant impact on Defendant's redevelopment plans.

19.     Specifically, by letter dated September 5, 2012, Defendant, through its managing agent Lerner Corporation, admitted that it first alleged the same breach in 2006.  Defendant further admitted that it "refrained" from taking any action with respect to the alleged breach for

4

some 6 years.  (See September 5, 2012 correspondence attached hereto as Exhibit C.)  Now, however, Defendant changed course and claimed that D&B had thirty (30) days to "cure" this alleged "default".

20.     After issuing its September 5, 2012 correspondence, discussions between the parties occurred and continued and, on September 12, 2012, Defendant expressed a desire that D&B remain a part of the redeveloped Shopping Center.  To this end, Defendant committed to send to D&B both a redevelopment timeline and a proposal concerning the possible relocation of Dave & Buster's within the redeveloped Shopping Center.

21.     By letter dated October 9, 2012, however, Defendant notified D&B that it had "terminated" the Lease, effective December 31, 2012.  (See October 9, 2012 correspondence attached hereto as Exhibit D.)

22.     Notwithstanding the claimed "termination" of the Lease, the parties continued their discussions which included:  (1) the feasibility of D&B becoming a part of the redeveloped Shopping Center; (2) the potential Lease by D&B of premises in another shopping center owned by Defendant or an affiliate of Defendant; and (3) the possibility of D&B operating at its current location throughout the renovation like Lord and Taylor.

23.     Far from "terminating" the Lease as claimed in Defendant's October 2012 correspondence, the parties continued operating, as they had since 1995, pursuant to the terms and conditions of the Lease.

24.     In August 2013, the parties met and, on August 13, 2013, D&B in follow-up correspondence outlined the issues raised, namely: (1) the feasibility of D&B becoming a part of the redeveloped Shopping Center; (2) the possibility of D&B leasing space in another shopping center owned by Defendant or an affiliate of Defendant; and (3) the subject of

compensation to D&B for any damages incurred as a result of any premature termination of its Lease. (See August 13, 2013 correspondence attached hereto as Exhibit E.)

25.     To the extent that any relocation or shutdown of D&B's operations were to occur, D&B made clear that Defendant must make D&B whole for any damages incurred.

26.     Apparently unhappy with the discussions, on October 17, 2013 – more than a year after its September 5, 2012 correspondence (and more than seven and one-half (7-1/2) years after it originally alleged the breach in 2006) – Defendant again changed course, claimed that D&B stood in default of its obligations under the Lease and ordered that D&B vacate and surrender possession of the Leased Premises by November 30, 2013. (See October 17, 2013 correspondence attached hereto as Exhibit F.)

27.     D&B's Lease, however, entitles it to remain in possession of the Leased Premises until the year 2032 if D&B so chooses.

**IV.     The Lease Places Restrictions On Defendant's Redevelopment Rights**

28.     Through the Lease, the parties expressly contemplated Defendant's right to redevelop the Shopping Center and, to this end, the parties negotiated restrictions on Defendant's ability to do so.

29.     For example, Article VIII, Section 8.2 of the Lease states, in pertinent part:

> Landlord shall not renovate, remodel, enlarge or otherwise perform any work in, on or about the Shopping Center ("Landlord's Remodel") which causes a Material Interference except as permitted under B of the Recitals with Tenant's normal business operations in the Demised Premises.

30.     Section B of the Recitals to the Lease expressly limits any interference to D&B's business associated with Defendant's redevelopment efforts. For example, Section B states:

> Landlord may also make other improvements to the Shopping Center including, without limitation, the construction of additional

6

department stores and other stores, malls, walkways, covered deck or underground parking, hotels, motels, office buildings and other free standing buildings provided no such other improvements shall materially and adversely affect Tenant, including, without limitation, any such improvement which would interfere with the (i) visibility of the "Facade Sign" (as hereinafter defined) from Rockville Pike (provided such Facade Sign may be replaced with a substitute Facade Sign (of substantially the same size and with comparable visibility from automobile traffic on Rockville Pike) which is reasonably acceptable to Tenant); (ii) ingress to or egress from the Demised Premises, access to the Shopping Center and the "Enclosed Mall," as identified on Exhibit A-1 (the "Enclosed Mall") parking ramps or pedestrian bridges; (iii) the use of parking areas or access thereto from the Demised Premises; or (iv) changes to the facilities or areas which are granted to Tenant on an exclusive or semi-exclusive basis under Section 1.2 (any such material and adverse interference being hereinafter called a "Material Interference"). Landlord may, and hereby reserves the right, at any time, and from time to time, to add land or eliminate land from the Shopping Center (in the event land is added, for Real Estate tax purposes, it shall be considered part of the Shopping Center only when developed as a part of the Shopping Center) provided no such elimination shall cause or result in a Material Interference with the Demised Premises.

31.     Section B of the Recitals further limits any interference with D&B's business associated with Defendant's renovation efforts. By way of example: (1) Defendant is required to consult with D&B to ensure that any impact on D&B's operations associated with the renovation is minimal; (2) no adverse impact on access to D&B may occur; (3) D&B's customers must be permitted to park in reasonable proximity to the restaurant; (4) no change to the third floor parking deck adjacent to D&B, or pedestrian ramp leading thereto may occur; and (5) construction associated with the renovation cannot last for more than six (6) months, or eighteen (18) months in the case of an expansion of the Shopping Center.

32.     Specifically, Recital B states, in pertinent part:

It is expressly and understood and agreed that, notwithstanding anything in this Lease to the contrary, actions by Landlord which

7

would otherwise constitute a Material Interference shall be deemed not to be a Material Interference provided Landlord provides sixty days (60) days' advance notice to Tenant, provides alternative arrangements (after consultation with Tenant) to be sure the impact on Tenant's business is minimal, which alternative arrangements do not have a material and adverse impact on access to the Demised Premises or the ability of Tenant's customers to park in reasonable proximity to the Demised Premises (it being acknowledged that any change in the third floor parking deck adjacent to the Demised Premises or the pedestrian ramp leading thereto would constitute a "Material Interference") and the conditions do not exist for a period exceeding six (6) months (eighteen (18) months in the case of an expansion of the Shopping Center of Fifty thousand (50,000) square feet or more). Any alternative arrangements shall be subject to Tenant's approval, not to be unreasonably withheld or delayed.

33.    Defendant has commenced its redevelopment efforts and, upon information and belief, those efforts will imminently and irreparably harm D&B in that its rights under the Lease will be violated including, but not necessarily limited to, those rights found in Section 1.2 and Section B of the Recitals to the Lease.

34.    D&B seeks merely to enforce its rights under its Lease with Defendant.

35.    Additionally, Section 20.7 of the Lease provides for an award of all litigation expenses including attorneys' fees to D&B for any litigation involving the enforcement of any right or remedy contained in the Lease should D&B prevail. Through this action, D&B seeks to enforce its rights and remedies under the Lease.

## COUNT I

### DECLARATORY JUDGMENT

36.    D&B incorporates by reference the allegations of paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37.    An actual controversy has arisen and now exists between D&B, on the one hand, and Defendant, on the other hand.

38.    As set forth above, Defendant contends that D&B has breached the Lease.  D&B disagrees.

39.    Defendant first became aware of the facts and circumstances underlying its claim of breach on or before April 13, 2006.

40.    Because Defendant was aware of the facts and circumstances constituting the alleged breach on or before April 13, 2006, any claim of breach in this regard is time barred under the applicable statutes of limitations or has been otherwise waived.

41.    Additionally, the radius restriction clause contained in Section 11.3 of the Lease is unenforceable in its own right.

42.    D&B desires a judicial determination of the parties' rights and duties under the Lease and, more specifically, a determination that Defendant's claim of breach by Defendant based upon the 2004 acquisition and subsequent rebranding of Jillian's is time barred under the relevant statutes of limitations or has been otherwise waived.

43.    A judicial determination of the parties' rights and duties under the Lease is necessary and appropriate at this time, under these circumstances, so that the parties may ascertain their contractual rights and obligations.

## COUNT II

### SPECIFIC PERFORMANCE OF THE LEASE AGREEMENT
### AND REQUEST FOR PRELIMINARY INJUNCTION

44.    D&B incorporates by reference the allegations of Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

9

45.    D&B and Defendant entered into a valid enforceable Lease which contains rights and restrictions relating to Defendant's redevelopment activities.

46.    Defendant has commenced its redevelopment and, upon information and belief, will imminently undertake redevelopment activities which will violate the Lease including, but not limited to, rights held by D&B under Section 1.2 and Section B of the Recitals to the Lease.

47.    Additionally, Defendant's redevelopment activities will not be completed within the time frame mandated by the Lease: six (6) months or, alternatively, eighteen (18) months if the redevelopment includes an expansion of the Shopping Center in excess of fifty thousand (50,000) square feet.

48.    If Defendant proceeds with its redevelopment in a manner which violates the Lease, the good will, reputation, and existing customer base that D&B has developed in the community over the last 18 years will be irreparably harmed.

49.    Because no adequate remedy of law exists which could address Defendant's breaches and its continued attempt to carry out its renovations in a manner contrary to the terms of the Lease, D&B respectfully requests that this Court maintain the status quo at the Shopping Center by specifically enforcing the Lease and enjoining Defendant, while the Lease is in effect, from taking any steps or performing any act which violates the Lease.

50.    The equity and public interest overwhelmingly favor the issuance of this injunction and Maryland law strongly favors upholding valuable property rights as well as enforcing contractual obligations such as those found in the Lease.

51.    Additionally, it would be inequitable not to issue the injunction because D&B, since 1995, has acted in accordance with its own obligations under the Lease and has generated significant revenue for Defendant, not only associated with D&B's own payments under the

EAST\63060486.1
224074-000032

Lease, but also in association with having D&B, in conjunction with its reputation, operating at the Shopping Center.

52.     By issuing the injunction, this Court will not be precluding Defendant from constructing or proceeding with its renovations; rather, it will simply require Defendant to abide by the terms of the Lease.

## COUNT III

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.     D&B realleges and incorporates herein Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.     Implied in every contract is a covenant that each party will act in good faith and deal fairly with one another, and thereby do nothing in bad faith, which deprives the other party or parties of the benefits of the contract. Accordingly, Defendant has a duty under the Lease to do nothing that would interfere with or deprive D&B of its right to receive the benefits of the Lease.

55.     Defendant has breached the implied covenant set forth in the Lease by engaging in the wrongful conduct alleged herein. Specifically, Defendant has alleged that, among other things, D&B is in breach of certain provisions of the Lease, including Section 11.3.

56.     All of Defendant's conduct was undertaken with the goal of making D&B terminate the Lease and/or make it impossible and/or impractical for D&B to comply with its obligations under the Lease and, thereby, create a justification for terminating the Lease and evicting D&B from the Leased Premises.

EAST\63060486.1
224074-000032

57.     By engaging in such wrongful conduct, Defendant has willfully and deliberately denied D&B of the benefits under the Lease and thereby breached the implied covenant of good faith and fair dealing.

58.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, D&B has suffered and will suffer substantial monetary harm in a sum to be determined at trial, but which is in excess of the jurisdictional minimum of this Court.

## PRAYER

WHEREFORE, D&B prays for judgment against Defendant as follows:

1.     For a judicial determination as to the parties' rights and obligations under the Lease, including a determination that Defendant's claimed breach under Section 11.3 of the Lease is time barred, and that D&B is not in default under the Lease;

2.     For injunctive relief specifically enforcing the Lease against Defendant;

3.     For damages in an amount to be proven at the time of trial;

4.     For reasonable attorneys' fees as provided for in the Lease;

5.     For costs of suit; and

6.     For such other and further relief as the Court may deem just and proper.

EAST\63060486.1
224074-000032

Dated:  November 12, 2013

_____/s/_____

Edward S. Scheideman
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
Tel: (202) 799-4000
Fax: (202) 799-5000

Attorneys for Plaintiff
Dave & Buster's, Inc., a Missouri
corporation

EAST\63060486.1
224074-000032