## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

DAVE & BUSTER'S, INC.                    *
                                         *
    Plaintiff,                     *
                                         *
v.                                       *          CASE NO.  8:13-cv-03390-RWT
                                         *
WHITE FLINT MALL, LLLP f/k/a             *
WHITE FLINT LIMITED PARTNERSHIP          *
                                         *
    Defendant.                     *
                                         *

## PLAINTIFF DAVE & BUSTER'S, INC.'S REPLY IN SUPPORT
## OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

    Plaintiff Dave & Buster's, Inc. ("D&B"), hereby submits its Reply in Support of Its Cross-Motion for Summary Judgment and states:

### INTRODUCTION

    It is hornbook law in Maryland that a cause of action accrues, and the statute of limitations attaches the moment a contract is breached. Hariri v. Dahne, 412 Md. 674, 688 n. 8, 990 A.2d 1037, 1045 (2010); Hyatt Insurance Agency, Inc., 356 Md. 639, 648, 741 A.2d 1099, 1104 (1999); Kumar v. Dhanda, 198 Md. App. 337, 343, 17 A.3d 744, 748 (2011); Boyd v. Bowen, 145 Md. App. 635, 669, 806 A.2d 314, 333 (2002).  In this case, it is undisputed that by April 2006 Defendant had notice of the acquisition, re-branding and operation of Jillian's and, in fact, alleged that D&B breached its lease in this regard.  It is similarly undisputed that the Defendant then said or did nothing for six and one-half years during which time the parties continued to perform as they always had under the very same contract.  It is also undisputed that in 2012, only in response to changing business conditions, Defendant resurrected its 2006 claim of breach relying on the very same event and section of the lease agreement.

Based on the undisputed facts here, Defendant's alleged breach of the lease is predicated upon the 2004 acquisition and rebranding of Jillian's and is time-barred as a matter of law. Indeed, to find otherwise would be to permit parties to contracts to stay silent in the face of purported breaches only to re-assert the alleged breach years later whenever business advantage dictated. This is precisely what statutes of limitations are designed to prohibit. See Hecht v. Resolution Trust, 333 Md. 324, 333, 635 A.2d 394, 399 (1994) ("Statutes of limitations are statutes of repose, allowing individuals the ability to plan for the future without the indefinite threat of potential liability").[1]

Defendant urges this Court to ignore both the fact that it had notice of the acquisition, re-branding and operation of the Jillian's for over six and one-half years as well as Maryland law which clearly holds that a cause of action accrues upon such notice and, instead, find that the "continuing breach exception" applies to the undisputed facts here. For the continuing breach exception to apply, however, multiple notice-producing events must be found, each of which causes independent injury. See e.g. Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Elec. Co., 79 Md. App. 461, 558 A.2d 419 (1989) (continuing breach exception applied where multiple independent events were found, each of which was a distinct and separate source of injury). Here, the foundation of the alleged breach is an event of which Defendant had notice, and Defendant fails to distinguish the overwhelming authority cited by D&B which confirms that the continuing breach exception cannot apply. Instead, what Defendant essentially asks is that this Court hold that any time an executory contract contains a covenant, and a party alleges that

---

[1] Indeed, when asserting the alleged breach in 2006, Defendant had a number of options, both under the lease and at law. For example, it could have sought specific performance of the radius restriction clause and, if successful, enjoined the operation of Jillian's. Or, to preserve its claim beyond the limitations period, Maryland courts recognize that Defendant should have entered into a tolling agreement or filed suit and stayed the action pending resolution of the dispute. Kumar v. Dhanda, 198 Md. App. 337, 345, 17 A.3d 744, 749 (Md. App. 2011). Defendant did nothing except continue to perform for years as if no problem existed.

the covenant has been breached, the statute of limitations attendant to that breach is tolled (or the claim does not otherwise accrue) until the expiration of the contract. Neither Maryland's legislature nor its courts have ever recognized this to be the law. To the contrary, courts which have considered the issue in the context of leases or non-compete and other covenants have rejected the very argument set forth by Defendant here and hold that a cause of action accrues, and the statute of limitations attaches, the moment notice of the alleged breach occurs. See e.g. Westminster Investing Corp. v. Lamps Unlimited, Inc., 237 Va. 543, 379 S.E.2d 316 (Va. 1989); Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises, Inc., 598 F.3d 970 (8th Cir. 2010); Air Transport Assoc. of America v. Lenkin, 771 F.Supp. 25 (D.D.C. 1989); Ford v. Int'l Harvester Co., 399 F.2d 749 (9th Cir. 1968).[2] Maryland law is the same.

In an apparent pivot from its previous reliance upon Singer, Defendant now resorts to Maryland case law having nothing to do with statutes of limitations, let alone the continuing breach exception thereto, along with antiquated and inapplicable non-Maryland law. As explained in more detail below, none of Defendant's cases hold that a party to a contract with notice of an alleged breach may unilaterally "reserve its rights" and toll the limitations period or accrual of the claim until the expiration of the contract.

With respect to waiver, the parties also do not dispute that Maryland law recognizes that a waiver of contractual rights occurs if a party to a contract: (1) intentionally continues performance under the contract; (2) after learning of a breach by the other party. MJ Harbor Hotel, LLC v. McCormick & Schmick Restaurant Corp., 599 F. Supp. 2d 612, 621 (D. Md.

---

[2]     Accepting Defendant's articulation of the law would, undoubtedly, have wide ranging consequences for Maryland contract law in general, and leases in particular. Indeed, strategic considerations could compel parties to allege a breach then approve of the changed condition through years of silence and continued performance only to re-assert the same breach when, for example, rental rates changed, a more attractive tenant desired particular space or, like here, development plans might benefit from terminating a lease.

2009). Here, it is obvious and undisputed that Defendant, by and through its April 13, 2006 letter, complained to D&B about the alleged breach but then "intentionally continued performance" for over six years notwithstanding the claimed breach. Maryland law has long recognized that one may not consent by silence and then be heard to object when circumstances suit. See Pumphrey v. Pelton, 250 Md. 662, 666-67, 245 A.2d 301, 304 (1968) ("[h]e who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent") (quoting Jaworski v. Jaworski, 202 Md. 1, 10, 95 A.2d 95, 99 (1953)).

Moreover, there can be no serious contention that the "nonwaiver" section of the lease applies. That provision is expressly conditioned upon a party not complaining of the act or omission forming the basis of the claim. There can be no dispute that Defendant did complain but, in any event, even were the "nonwaiver" section applicable, Maryland law still compels a finding of waiver, and summary judgment in favor of D&B is warranted because Defendant clearly accepted the acquisition and rebranding through its subsequent six and one-half year silence.

Finally, summary judgment is not appropriate with respect to Defendant's claim that the radius restriction clause of the lease has been breached. Indeed, as Defendant itself concedes, in evaluating the enforceability of radius restriction clauses, courts will look to the factual record to determine, by way of limited example, whether "a significant economic purpose has been demonstrated" to justify the restriction, whether the restriction is confined to "a reasonably limited territory" and, additionally, whether the restriction is "no broader than necessary to protect a lessor" or otherwise not "oppressive." Each of these are highly fact-specific determinations which, if Defendant had pled a breach of the radius restriction clause in the first instance, require discovery and the development of a factual record before a fact finder may

determine whether a particular radius restriction is enforceable under the circumstances. <u>See</u> <u>Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City</u>, 721 F.3d 264, 280 (4th Cir. 2013) (courts "must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition'") (quoting <u>Nader v.</u> <u>Blair</u>, 549 F.3d 953, 961 (4th Cir. 2008)). <u>See also</u> <u>Linneman v. City of Aberdeen</u>, No. MJG–12–2021, 2013 WL 3233526 (D. Md. June 25, 2013) (finding summary judgment "premature due to the absence of any discovery"). As such, summary judgment in the absence of that factual record is inappropriate.

## ARGUMENT

### I.    Under Maryland Law, Defendant's Claim Accrued In 2006 At The Latest.

It is undisputed that by no later than April 2006, Defendant not only knew of the acquisition and rebranding of Jillian's (or D&B's "operation" of Jillian's), but also claimed that this event constituted a breach of Section 11.3 of the lease, the radius restriction clause. It is also undisputed that after Defendant's 2006 claim of breach, Defendant chose to not enforce its purported rights for over six and one-half years, but instead the parties continued to perform under the lease as they always had, and Defendant accepted over $4 million in rent. There is similarly no dispute that in September 2012, Defendant resurrected its 2006 claim of breach based upon both the very same event and section of the Lease Agreement.

Maryland law is clear -- Defendant's 2006 claim of breach is barred by the three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Maryland courts universally recognize that the statutory language is mandatory, and the limitations period begins to run the date the contract was breached. <u>Kumar</u>, 17 A.3d at 748 (citing <u>Hariri v. Dahne</u>, 990 A.2d at 1045, n. 8). Indeed, it is hornbook law in Maryland that "a cause of action for breach of contract accrues when the contract is breached, and when 'the breach was or should have been

discovered.'" Boyd v. Bowen, 806 A.2d at 333 (quoting Hyatt Insurance Agency, Inc., 741 A.2d at 1104). Here, the parties do not dispute that Defendant knew and, in fact, claimed that a breach occurred by April 2006, at the latest.

Defendant attempts to distinguish this Court's clear line of authority which recognizes that the continuous breach theory does not apply to the undisputed facts here on the grounds that those cases are "factually different." ECF No. 13 at 9. Defendant misses the point.

For example, Defendant dismisses Comi v. Int'l Longshoreman's Association, Local No. 333, No. RDB-06-2927, 2007 WL 4268945 (D. Md. Nov. 30, 2007) solely on the basis that "[i]t is unclear what relevance federal labor law has on the case at hand." ECF No. 13 at 10. However, the factual circumstances in Comi are directly pertinent to the case *sub judice*. There, the Plaintiff, a longshoreman, alleged that the longshoreman's union violated its duty of fair representation by implementing a drug policy. Because the policy was still in place and being enforced, the Plaintiff further alleged that the breach "has continued at all relevant times herein, and continues to the present date." Comi, 2007 WL 4268945, at *6. Nevertheless, this Court specifically rejected the application of the continuous breach theory, noting that "[i]f this were true the statute of limitations would never bar Plaintiff's claim as long as the [drug policy] is in place." Id. The flawed "continuing breach" theory set forth by the Plaintiff in Comi is precisely the nature of the "breach" alleged by Defendant here. Like the Plaintiff in Comi, Defendant asks this Court to adopt a view of the statute of limitations that would preclude its application while the lease is in place, i.e. for an additional eighteen years. As this Court noted in Comi, such an interpretation is a far cry from "the purpose of a statute of limitations, which is to require the prompt presentation of claims." Id. (quoting Coppage v. United States Postal Service, 281 F.3d 1200, 1206 (11th Cir. 2002)).

Defendant also fails to distinguish <u>Ruddy v. Equitable Life Ins. Society of United States</u>, No. CIV. A DKC 00-70, 2000 WL 964770 (D. Md. June 20, 2000). In that case, a life insurance company failed to integrate oral promises it made to a policy holder into a written insurance contract. Contrary to Defendant's claim, the factual circumstances of <u>Ruddy</u> are *very* meaningful to this case. There, this Court found the statute of limitations had run because while "there was a continuing obligation on the part of [the defendant] to live up to its alleged promises, there was only a single breach from which all of Plaintiff's harms flowed." <u>Ruddy</u>, 2000 WL 964770, at *5. Consequently, "[t]he actions that followed, including the cancellation of the policy, were natural consequences of the breach and only affected the extent of the injury Plaintiff would sustain as a result of the alleged breach. They did not constitute separate breaches that started the limitations period anew." <u>Id</u>. Here, it is axiomatic that any harm suffered by Defendant flowed from the acquisition and rebranding of Jillian's. As such, Maryland's statute of limitations attached the moment that Defendant was informed of that acquisition and rebranding.

Defendant's treatment of <u>Abbott v. Gordon</u>, No. DKC 09-0372, 2009 WL 2426052 (D. Md. Aug. 6, 2009) fares no better. Specifically, what Defendant omits is that the <u>Abbott</u> Court made clear that breaches of contract akin to the one alleged here cannot qualify as a "continuous violation" because "to qualify as continuing violations, the acts must be 'continuing unlawful acts . . . not merely the continuing effects of a single earlier act.'" <u>Abbott</u>, 2009 WL 2426052, at *6 (citing <u>MacBride v. Pishavian</u>, 402 Md. 572, 584, 937 A.2d 233, 240 (2007)). As noted above, any effects or harm "suffered" by Defendant as a result of the operation of the Arundel Mills facility are attributable to one alleged breach, the acquisition and rebranding of Jillian's.

Nor does Defendant properly distinguish the cases cited by D&B which expressly concern leases or restrictive covenants similar to the one at issue here. Defendant simply dismisses <u>Westminster Investing Corp. v. Lamps Unlimited, Inc.</u>, 237 Va. 543, 379 S.E.2d 316, (Va. 1989) on the basis that Virginia law recognizes a five year statute of limitations, has rejected "any equitable approach to the defense of limitations," and does not recognize the discovery rule. ECF No. 13 at 11. This is beside the point and has no bearing on the determination of whether Defendant's 2006 claim is time-barred.[3] The Court in <u>Westminster</u> rejected the argument set forth by Defendant here that a covenant in a lease mandates that the limitations period start anew on a periodic basis. Rather, the Court held that where, like here, a party has <u>notice</u> of a breach of a covenant (an alleged "continuing obligation" under a lease), and the law affords a remedy thereunder, the cause of action accrues and the statute of limitations attaches at that point. <u>Westminster</u>, 379 S.E. 2d at 319. Maryland law is exactly the same.

Tellingly, Defendant does not even address <u>Ford v. Int'l Harvester Co.</u>, 399 F.2d 749 (9th Cir. 1968). That case involved an exclusive dealership with a twenty-three mile non-compete restriction similar to the one alleged here. The Court recognized that even though the restriction was a "continuing obligation" to not establish a dealership within a non-compete radius, the continuing breach theory simply was not applicable. Rather the suit was time-barred because the Plaintiff's cause of action accrued when it first had <u>notice</u> of the facts and circumstances

---

[3]     Whether Virginia recognizes the discovery rule, which allows for later accrual of the statute of limitations when a Defendant is unaware of all the underlying facts, is irrelevant, because it is undisputed that Defendant knew about the alleged breach by no later than 2006. It is also irrelevant that Virginia's statute of limitations for breach of contract is two years longer than Maryland's, as Defendant is being held to Maryland's standard, not Virginia's. Similarly, Maryland also rejects any "equitable tolling" of the defense of limitations and, indeed, Maryland courts have recognized that the limitations period is to be strictly construed. <u>Murphy v. Merzbacher</u>, 346 Md. 525, 532-33, 697 A.2d 861, 865 (1997).

surrounding the alleged breach of the radius restriction. Ford, 399 F.2d at 752. The same result
is mandated by Maryland law.

Similarly, in Pinnacle Pizza Company, Inc. v. Little Caesar Enterprises, Inc., 598 F.3d
970 (8th Cir. 2010), the Eighth Circuit reversed the district court's application of the continuing
breach theory where, like here, a party alleged that a negative restrictive covenant providing for a
continuing duty had been continuously breached. In that case, the Plaintiff, a franchisee, brought
suit against the Defendant, a franchisor, claiming that the Defendant had violated a continuing
duty in the franchise agreement that the franchisor not use original advertising materials created
by the franchisee without the franchisee's consent. Plaintiff had initiated a marketing campaign
using the commercial phrase "Hot-N-Ready" to describe the quality of its pizzas and the speed in
which they would be delivered to the customer. The Defendant began using the phrase at other
franchise locations, without Plaintiff's consent. In reversing the lower court, the Eight Circuit
held that the statute of limitations had run because the first unauthorized use of the phrase "Hot-
N-Ready" occurred years before and outside the limitations period. Even though the Defendant
had continued to use the phrase thereafter, and the contract contained a continuing duty not to do
so, the court held this had no effect on accrual of the statute of limitations, expressly noting that
"one continuing breach occurring prior to [the beginning of the limitations period] would not
reset the statute with each subsequent use of "Hot-N-Ready" and would therefore time-bar all of
[Plaintiff's] claims in this case." Pinnacle Pizza, 598 F.3d at 974-75. Because the continuing
duty in the franchise agreement was not equivalent to an installment contract, where the
continuing breach exception might apply, the statute of limitations had run on the breach of
contract claim, because *"once breached, nothing reset [the] duty."* Id. at 978 (emphasis added).
Therefore, "if [Defendant] breached the franchise agreement, it did so once – the first time

[Defendant] appropriated 'Hot-N-Ready,'" and the breach of contract claim "accrued when [Defendant] materially breached the contract." Maryland law requires the same result.

Finally, in <u>Air Transport Assoc. of America v. Lenkin</u>, 771 F.Supp. 25 (D.D.C. 1989), the court also rejected the argument set forth by Defendant here and held that the limitations period attached to notice of the breach.  In that case, a tenant filed suit alleging that the landlord had incorrectly interpreted the lease and, as a result, the tenant overpaid rent on a monthly basis for seventeen years.  The landlord prepared a rent calculation based on its interpretation of the lease years beyond the limitations period.  In awarding summary judgment and finding the claim for overpayment time-barred, the court squarely rejected the tenant's contention that each rent payment constituted a new breach, and that consequently all payments made within the limitations period were not time-barred.  The tenant argued, like Defendant here, that because the obligation (to pay rent) continued throughout the life of the lease, the breach occurred on a monthly basis with each payment.  The court flatly rejected this reasoning and held that a continuing breach could not be found because the tenant had <u>notice</u> as to how the rent would be calculated well before the limitations period had run.  Like Maryland law, the limitations period attached to tenant's notice and the claim was time-barred.  <u>Id.</u> at 26-28.  The same reasoning applies here.

**II.    In A Pivot From <u>Singer</u>, Defendant Cites Maryland Cases Which Have Nothing To Do With Statutes Of Limitations, Along With Outdated Fundamentally Different Non-Maryland Law.**

In its Motion for Summary Judgment, Defendant cited a single case, <u>Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Elec. Co.</u>, 79 Md. App. 461, 558 A.2d 419 (1989), in support of its contention that the statute of limitations based on the 2004 event was tolled until three years after the 2032 expiration of the lease.  <u>Singer</u>, however, did not concern a single injury-producing event such as the acquisition and rebranding here, but rather multiple events,

each of which was distinct and an independent source of injury. Under those facts, the Court allowed claims as to those events which occurred within the three-year limitations period.

Now, through its Reply, Defendant relies primarily on the 1928 case of Kaliopulus v. Lumm, et ux., 155 Md. 30, 141 A. 440 (1928). Kaliopulus, however, had nothing to do with Maryland's statute of limitations, let alone the continuing breach exception to the statute of limitations. Rather, Kaliopulus concerned the equitable doctrine of laches, which the court recognized as entirely distinct from the statute of limitations. Specifically, in Kaliopulus, appellee waited over five years to bring suit. Appellant contended that the unexplained delay mandated dismissal under the equitable doctrine of laches. Id. at 445. The Court noted that in applying the equitable doctrine of laches, the "[m]ere lapse of time, without more, unless of sufficient duration to amount to and constitute the bar of the statute of limitations, will not be sufficient." Id. at 444 (emphasis added). The Court then held that the statute of limitations had not run because "…the contract is a specialty, and so the limitations period could not operate as a bar to an action at law for any breach of covenant until 12 years had run." Id. at 445 (citations omitted). Because the 12 year statutory period had not elapsed, the statute of limitations was inapplicable. Id. In other words, what Defendant fails to mention is that in Kaliopulus, the Court expressly recognized that the statute of limitations may bar claims not barred by laches and may have barred the claim there had the limitations period run. As such, Defendant's reliance on Kaliopulus, like its reliance on Singer, is misplaced.

Curiously, Defendant cites Pumphrey v. Pelton, 250 Md. 662, 245 A.2d 301 (1968), which also had nothing to do with Maryland's statute of limitations or the continuing breach exception. Rather, Pumphrey concerned the doctrines of equitable estoppel and waiver. In that case, the Plaintiff knew that the Defendant was violating a provision of a franchise agreement

which prohibited the sale of products other than those offered by the franchisor.  After an exhaustive analysis of the doctrines of waiver and estoppel, the Court held that because the Plaintiff well knew that the Defendant was selling products other than those offered by the franchisor, yet acquiesced anyway, the Plaintiff had waived and was otherwise estopped from subsequently asserting a breach of the agreement based on the very same conduct.  Indeed, the court so held even though the contract in Pumphrey, like the lease here, contained a "nonwaiver" provision.  This same result is compelled here.

Defendant's final Maryland case is Litz v. Maryland Department of the Environment, 434 Md. 623, 76 A.3d 1076 (2013).  This case concerns the "continuing harm" doctrine under tort law, not the "continuing breach exception" under contract law and, more specifically, the contamination of groundwater caused by multiple pollution discharges.  To the extent that Litz may be instructive at all, that instruction lies in the Court's affirming the dismissal of Plaintiff's nuisance claims on limitations grounds.  Plaintiff alleged both public and private nuisance as a result of the repeated contamination.  The Court explained that a "claim for 'permanent nuisance' must be brought within three years of the date when 'the permanency of the conditions causing the reduction in the market value of the land be[comes] manifest to a reasonably prudent person[.].'"  Id. at 1087-88 (citation omitted).  To be sure, a permanent nuisance is "continuous" and ongoing, and Maryland law recognizes that a "permanent nuisance 'will be presumed by its character and circumstances to continue indefinitely.'"  Id. at 1088 (emphasis added)(citations omitted).  Notwithstanding its "indefinite" and "continuous" nature, Maryland law recognizes that the event which forms the basis of the nuisance triggers the accrual of the nuisance claim, and therefore, Maryland's three year statute of limitations attaches at that point.  The same

rationale is applied to contract cases under Maryland law.[4]  Where the "permanency of the condition" constituting the breach occurs or, put another way, the claim accrues, the statute of limitations attaches.

Alternatively, the Litz court explained that if there are separate and distinct-injury producing events, such as is the case with temporary nuisance, Maryland law recognizes that "successive actions may be brought for damages for each invasion of the plaintiff's land..." Id. at 1088.  Importantly, "[t]his is because '[w]here a nuisance is temporary and abatable, every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated.'" Id. (citations omitted). Indeed, this is the exact same logic which underpins the holding in Singer where multiple events, each of which was a distinct and independent source of injury, were found.

Ultimately, in Litz, the Court found that the first documented contamination occurred in 1991. Id. at 1080.  Based on the record before it, the Court found that further events of contamination occurred on a daily basis for longer than three years. Id. at 1084 n.7.  Each of these instances of contamination was a separate and distinct injury-producing event, and therefore, the Court employed the "continuing harm doctrine" the purpose of which "is to avoid punishing a plaintiff 'because one or more [violations] occurred earlier in time." Id. at 1090 n.9 (citation omitted).

---

[4]     Another example, similar to both Maryland's treatment of nuisance and the continuous breach exception, is the "continuous claim theory" which is implicated in breach of contract claims involving the federal government. See Banks v. U.S., 88 Fed.Cl. 665 (Fed. Cl. 2009).  Like nuisance and the continuous breach exception, the continuing claims doctrine states that "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." Brown Park Estates–Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed.Cir.1997).  Therefore, to qualify as a continuing claim, the claim of breach must be "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Banks, 88 Fed.Cl. at 670 n.4.  Here, any alleged breach by virtue of the acquisition, rebranding and operation of Jillian's clearly cannot be broken down into such independent or distinct events or wrongs having their own associated damages.  To the contrary, it is a single injury-producing event.

Defendant's out-of-state authority fares worse because the law of these respective jurisdictions – Tennessee, Oklahoma and Missouri – is simply different than Maryland law.[5] Moreover, putting aside the application of different law, the facts attendant to these cases are completely inapposite to the single event which would form the basis of any damages here.

For example, the almost century-old case of <u>Carnegie Realty Co. v. Carolina C. & O. Ry. Co.</u>, 136 Tenn. 300, 189 S.W. 371, 373 (Tenn. 1916) dealt with a breach of a land covenant that ran with the ownership of the land, and said nothing about a continuous breach of contract. <u>Indian Territory Illuminating Oil Co. v. Rosamond</u>, 190 Okla. 46, 120 P.2d 349 (1941), is almost seventy years old and concerned periodic and wrongful drainage of oil from adjacent lands. These specific and discrete events are more akin to the power failures in <u>Singer</u> than they are to the single act of acquiring and rebranding the Jillian's facility at issue here.  <u>Lake St. Louis Comm. Assoc. v. Oak Bluff Preserve</u>, 956 S.W.2d 305 (Mo. 1997) provides no relief for Defendant either, as it addressed entirely different circumstances – namely, an affirmative obligation to construct and maintain a marina.  Notably, the <u>Oak Bluff</u> court's discussion of that obligation as "continu[ing] day to day" was limited to the nature of the wrong being a "failure to maintain", and had nothing to do with the negative restrictive covenant at issue here. Accordingly, none of these cases benefit Defendant in any way.

---

[5] Under Tennessee law, if a breach continues and does not conclude, then the statute of limitations does not bar a Plaintiff from bringing a claim based upon that breach.  See <u>Watson v. Rentenbach Engineering</u>, No. 3:09–CV–150, 2009 WL 3784960, at *3 (E.D.Tenn. Nov. 10, 2009).  In Oklahoma, a party may sue despite the statute of limitations for an ongoing breach of covenant as long as that breach continues.  See <u>Vranesvich v. Craft</u>, 241 P.3d 250, 254 (Okla. Civ. App. 2010) (finding that breach of covenant not to place a home on certain property "continues so long as the home remains" because "[T]he right to maintain an action for [a continuing] breach continues so long as the breach continues, and plaintiff is damaged thereby." (quoting <u>Indian Terr. Illuminating Oil Co.</u>, 120 P.2d at 352).  Finally, Missouri's "continuing breach" rule is also more permissive than Maryland's.  See <u>M & D Enterprises, Inc. v. Wolff</u>, 923 S.W.2d 389, 397 (Mo. App. 1996) ("If . . . the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.") (quoting <u>Davis v. Laclede Gas Co.</u>, 603 S.W.2d 554 (Mo. banc 1980)).

### III.   Defendant Has Similarly Waived Any Claim Based On The Acquisition And Rebranding Of Jillian's.

There can be no dispute that the plain language of the "nonwaiver" clause of the lease, Section 20.3, is clear and unambiguous.  By its express terms, Section 20.3 conditions any reservation of rights on a "failure to complain" about any act or omission.  Put simply, the parties agreed that if a party "failed to complain" about any act or omission on the part of the other party, such failure to complain "shall not be deemed a waiver by said party of any of its rights..."  See Lease (ECF No. 1 Ex. A) Section 20.3  There can similarly be no dispute that by and through Defendant's April 13, 2006 letter, Defendant "complained" about D&B's actions with respect to the acquisition and rebranding of Jillian's or, put another way, the "operation" of Jillian's by Defendant.  Indeed, Defendant alleged that D&B breached the lease by virtue of the event.  By any objective measure, Defendant's "complaint" in this regard makes Section 20.3 inapplicable as a matter of law.  In any event, even had Defendant "failed to complain" and Section 20.3 were applicable, a waiver still should be found as a matter of law.

As explained in D&B's Cross-Motion for Summary Judgment, under Maryland law a waiver of rights under a contract will be found if a party:  (1) continues to perform (2) after learning of the breach.  MJ Harbor Hotel, LLC v. McCormick & Schmick Restaurant Corp., 599 F.Supp.2d 612, 621 (D. Md. 2009); Pumphrey v. Pelton, 245 A.2d at 304 (finding a waiver and recognizing that "[h]e who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent")(citations omitted).  Moreover, it is equally established in Maryland that parties to a contract may waive provisions of that contract despite the existence of a nonwaiver clause.  See Hovnanian Land Investment Group, 421 Md. 94, 118, 25 A.3d at 967, 981 (2011) (citing Charles Burton Bldrs. v. L & S Constr. Co., 260 Md. 66, 87–89, 271 A.2d 534, 545–46 (1970)); Pumphrey, 245 A.2d at 306.

Here, the undisputed facts clearly demonstrate that after its 2006 letter complaining of a breach, Defendant remained silent and, indeed, continued to accept the profits and benefits attendant to the parties' business relationship. Defendant failed to even mention the issue until some six and one-half years later when it saw a business advantage in doing so. To the extent that this Court even needs to consider whether a waiver has occurred given that the statute of limitation bars any such claim, summary judgment in favor of D&B is appropriate under the undisputed record, and certainly should be denied with respect to Defendant.[6]

**IV.    Whether The Radius Restriction Clause Has Been Breached Is A Fact Intensive Inquiry, And Therefore, Dependent On A Factual Record. As Such, Even Were The Claim Not Time-Barred Or Otherwise Waived, Summary Judgment Would Be Inappropriate In The Absence Of A Developed Factual Record.**

Defendant is correct that D&B contends that "the radius restriction clause in the lease is 'unenforceable.'" ECF No. 13 at 12 (citing D&B's Complaint at ¶ 41). To be sure, Maryland courts have upheld (and rejected) radius restriction clauses in leases, but have done so based on an examination of the facts attendant to their enforcement. Here, even were Defendant's radius restriction claim not time-barred or otherwise waived, the restriction itself would be unenforceable. This is a highly fact dependent inquiry, and therefore, not appropriate for adjudication in the absence of a fully developed factual record. See Greater Baltimore Center for Pregnancy Concerns, Inc., 721 F.3d at 280 (courts "must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its]

---

[6]     To be sure, summary judgment in favor of Defendant should be denied. Defendant claims that D&B has presented no evidence as to "intent." ECF No. 13 at 12. To the extent that such evidence is even needed, that evidence will be developed through discovery. Generally, "[t]he question of whether waiver has occurred is a question of fact." City of Bowie v. MIE Properties, Inc., 398 Md. 657, 699, 922 A.2d 509, 534 (2007); see also Hovnanian Land Investment Group 25 A.3d at 983 ("whether subsequent conduct of the parties amounts to a modification or waiver of their contract is generally a question of fact to be decided by the trier of fact."). Therefore, whether a contractual waiver exists is generally not an appropriate issue for summary judgment. See Id. at 984 ("Given the highly factual nature of the waiver inquiry, it is an uncommon case in which the issue can be resolved by summary judgment.").

opposition'") (quoting <u>Nader</u>, 549 F.3d at 961). <u>See also</u> <u>Linneman v. City of Aberdeen</u>, No. MJG–12–2021, 2013 WL 3233526, at *3 (D. Md. June 25, 2013) (finding summary judgment "premature due to the absence of any discovery").

Defendant itself contends that Maryland courts, when evaluating whether a radius restriction clause is enforceable, will look to a developed factual record to determine if "a significant economic purpose has been demonstrated." ECF No. 13 at 13 (citing <u>Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.</u>, 400 Md. 718, 929 A.2d 932) (2007).[7] Similarly, Defendant cites to <u>Williston on Contracts</u> for the propositions that courts will similarly examine whether the particular radius restriction at issue is confined to "a reasonably limited territory," and is "no broader than necessary to protect [the lessor]..." ECF No. 13 at 13-14. These are highly fact specific inquiries, and no factual record has been developed in this case. <u>See</u> <u>Liautaud v. Liautaud</u>, 221 F.3d 981, 987 (7th Cir. 2000) (holding that whether the scope of a noncompetition agreement is reasonable is "based on the facts and circumstances of the particular case."); <u>Woman's Clinic, Inc. v. St. John's Health System, Inc.</u>, 252 F.Supp.2d 857, 871 (W.D.Mo. 2002) ("Temporary and spatially limited restraints are enforceable if reasonable under all attending circumstances.") (citing <u>Schott v. Beussink</u>, 950 S.W.2d 621, 626 (Mo.Ct.App.1997)). Moreover, the burden of demonstrating a "significant economic purpose" based on the attendant facts is a burden that lies squarely with the party trying to enforce the

---

[7]     Other jurisdictions employ essentially the same analyses. <u>See</u> <u>Harley Automotive Group, Inc. v. AP Supply, Inc.</u>, No. 12–1110 (DWF/LIB), 2013 WL 6801221 (D.Minn. Dec. 23, 2013) (considering "(1) whether the restraint is necessary for the protection of the business or goodwill of the employer; (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests; (3) how long the restriction lasts; and (4) the geographic scope of the restriction") (citing <u>Prow v. Medtronic, Inc.</u>, 770 F.2d 117, 120 (8th Cir.1985)); <u>Woman's Clinic, Inc. v. St. John's Health System, Inc.</u>, 252 F.Supp.2d 857, 871-72 (W.D.Mo. 2002) ("Whether a spacial or geographic restriction is reasonable will depend on whether the restriction is no greater than necessary to protect the legitimate interest at stake."); <u>Liautaud v. Liautaud</u>, 221 F.3d 981, 987 (7th Cir. 2000) (holding that for a restrictive covenant to be reasonable, it must not be greater than necessary to protect the party it benefits, must not be oppressive to the other party, and "must not be injurious to the general public.").

restriction. Defendant has not even pled a breach of the radius restriction clause, let alone developed a factual record, including expert opinion, that shows that a "significant economic purpose has been demonstrated," the restriction is confined to a "reasonably limited territory," no broader than necessary to protect the lessor's interest, not oppressive, or any other factor which must be established before a radius restriction may be upheld.

In short, no factual record has been developed here which would entitle Defendant to summary judgment on its contention that the radius restriction has been breached. As such, Defendant's Motion for Summary Judgment should be denied in this regard and Defendant should plead, and then prove any such claim accordingly.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment should be denied and D&B's Cross-Motion for Summary Judgment should be granted.


Date:  February 12, 2014                         Respectfully submitted,

                                                 _____/s/_____
                                                 Edward S. Scheideman
                                                 Paul D. Schmitt
                                                 DLA Piper LLP (US)
                                                 500 8th Street, N.W.
                                                 Washington, D.C. 20004
                                                 Tel: (202) 799-4000
                                                 Fax: (202) 799-5000

                                                 Attorneys for Plaintiff
                                                 Dave & Buster's, Inc., a Missouri
                                                 corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| DAVE & BUSTER'S, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO.  8:13-cv-03390-RWT |
| | * | |
| WHITE FLINT MALL, LLLP f/k/a | * | |
| WHITE FLINT LIMITED PARTNERSHIP | * | |
| | * | |
| Defendant. | * | |
| | * | |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 12th day of February, 2014 a true an accurate copy of the foregoing Plaintiff's Dave & Buster's, Inc.'s Reply in Support of Its Cross-Motion For Summary Judgment, was e-filed and served via ECF filing system on:

> Albert D. Brault
> James M. Brault
> BRAULT GRAHAM, LLC
> 101 S. Washington Street
> Rockville, Maryland 20850
>
> Attorneys for White Flint Mall, LLLP f/k/a
> White Flint Limited Partnership
>
> .

> _____/s/_____
> Edward S. Scheideman