IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| DAVE & BUSTER'S, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Case No. 13-cv-03390-RWT |
| | : | |
| WHITE FINT MALL, LLP f/k/a | : | |
| WHITE FLINT LIMITED PARTNERSHIP, | : | |
| | : | |
| Defendant | : | |

**DEFENDANT WHITE FLINT MALL, LLLP'S REPLY TO PLAINTIFF DAVE &
BUSTER'S, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

**A.     D&B's Claim Regarding a Month-to-Month Tenancy**

In continuing to create new theories to defend its conduct and its continued presence in

the Premises at White Flint Mall notwithstanding the termination of the leasehold, Plaintiff,

Dave & Buster's ("D&B") has come up with a tortured "month-to-month tenancy" theory.  This

is a frivolous argument by D&B which in no way changes D&B's status nor the fact that

Defendant White Flint Mall, LLLP ("White Flint") is entitled to the summary judgment with

respect to White Flint's counterclaim (as requested in White Flint's pending Motion).

In its Opposition to White Flint's Motion for Summary Judgment, D&B claims to be a

"month-to-month" tenant in the Premises.  While D&B was, for a time, a month-to-month tenant

in the Premises, D&B no longer possesses that status.  As this Court ruled in its March 24th

Order, by letter dated October 9, 2012 (attached to D&B's Complaint as Exhibit D), White Flint

properly and validly exercised its right to terminate the Lease as of December 31, 2012. As such,

by reason of such termination, the Term of the Lease expired on December 31, 2012.

When D&B remained in possession of the Premises following such termination, pursuant to Section 20.2 of the Lease, D&B's occupancy of the Premises became a "tenancy at will from month to month." That periodic month-to-month tenancy was terminated effective November 30, 2013 by White Flint's Notice to Vacate dated October 17, 2013 (attached to D&B's Complaint as Exhibit F).

By virtue of D&B's failure to vacate the Premises upon the termination of such month-to-month tenancy, D&B became a tenant holding over, thereby entitling White Flint to immediately regain possession of the Premises pursuant to the terms of Section 8-402 of the Real Property Article of the Annotated Code of Maryland. As D&B remains unlawfully in possession of the Premises to this day, D&B's status remains that of a holdover tenant, as contemplated by the aforesaid statute.

Notwithstanding D&B's clear status under applicable Maryland law, D&B contends in its Opposition to White Flint's Motion for Summary Judgment that, so long as D&B continues to pay rent, such payment and acceptance of the same by White Flint creates a seemingly perpetual month-to-month tenancy. Fortunately, the Maryland legislature long ago eliminated this somewhat tortured argument "loophole" by adopting Section 8-402(b)(5) of the aforesaid statute, which provides in relevant part:

> "Acceptance of any payment after notice but before eviction shall not operate as a waiver of any notice to quit, notice of intent to vacate, or any judgment for possession unless the parties specifically otherwise agree in writing."[1]

---

[1] D&B cites the case of *Annapolis Fire and Marine Insurance Company v. Rich*, 239 Md. 573, 581-82 (1965) in support of its contention that it may remain in the Premises as a month to month tenant so long as it continues to pay rent. That case is inapposite to the issues here (the *Annapolis* Court found that three separate corporations were all co-tenants on a month-to-month basis rather than one of them being a sub-tenant, and as such, all three co-tenants were responsible for payments of rent) and its citation offers no support for the position put forth by D&B. Even if the case could be construed in a manner to make it relevant to the facts at hand, the legislature's 1999 adoption of Section 402(b)(5) renders irrelevant any guidance otherwise provided by the Court.

In light of the earlier findings of this Court relative to White Flint's exercise of its rights, White Flint's termination of any month-to-month tenancy and the clear language of the statute above, D&B possesses no further right to continued occupancy or possession of the Premises.[2]

**B.      D&B's Alleged Right to Cure**

In D&B's Opposition to White Flint's pending Summary Judgment Motion, D&B once again cites a portion of the last paragraph of Section 18.1 of the Lease and claims that the cited language provides D&B with the right to cure its default (and thereby presumably somehow "undo" the termination of the Lease) by paying any damages suffered by White Flint arising from the underlying breach.  D&B's contention in this regard is illogical and inconsistent with the plain language of the Lease.

1. Under the Circumstances, Any Right to Cure Has Expired

The specific portion of Section 18.1 of the Lease upon which D&B relies must be read in its full context. Section 18.1 provides White Flint with a variety of remedies in response to various types of default by D&B; both monetary and non-monetary.  Pursuant to Section 18.1 of the Lease, the right and ability to cure an event of default lies with D&B after it has been notified by White Flint of the nature of such default. A monetary default can be cured by the payment of the amount due as alleged; a non-monetary default can be cured by the performance of the covenant or agreement required to be performed.

White Flint formally notified D&B on two occasions that D&B was in non-monetary default of the Lease as a result of D&B's violation of the terms of Section 11.3 (the radius

---

[2] To the extent that this Court determines, for whatever reason, that D&B's current status in the Premises is that of a month-to-month tenant (rather than a holdover tenant), out of an abundance of caution, White Flint has sent to D&B yet another Notice to Vacate terminating any such month-to-month tenancy effective May 31, 2014 and demanding that D&B vacate on or before such date.  Such letter is being sent by White Flint without prejudice to the validity and effectiveness of its prior notices and without waiving any portion of its legal position outlined herein.

provision).  The first such notice was embodied in White Flint's April 13, 2006 letter to D&B

(attached to D&B's Complaint as Exhibit B).  White Flint provided a second notice of default

demanding that D&B cure the same in White Flint's letter of September 5, 2012 (attached to

D&B's Complaint as Exhibit C).  That letter provided in pertinent part:

> "This letter shall serve as formal notice to you pursuant to the
> terms of Section 18.1 of the Lease to cure the above-reference
> default within thirty (30) days.  Demand is hereby made that you
> cure the default within the aforesaid thirty (30) day cure period.  If
> you fail to timely cure such default by permanently ceasing
> operations at the Arundel Mills location, the Landlord hereby
> reserves the right to exercise or pursue any or all of the rights and
> remedies available to Landlord pursuant to the Lease and
> applicable law."

Notwithstanding the multiple notifications and demands, D&B failed to timely cure the

noticed default.  D&B's failure to cure within the timeframes set forth in the Lease provided

White Flint with several options as to how to enforce the terms of the Lease.  As this Court

recognized in its ruling at the March 21st hearing, one of those remedies was termination of the

landlord-tenant relationship.  That remedy was properly and validly exercised by White Flint,

thereby terminating the leasehold – and creating the month-to-month tenancy, the existence of

which D&B concedes in its Opposition existed (though D&B erroneously believes that the same

continues to this day).

This Court has ruled that the event of default occurred and that White Flint validly

exercised its right of termination. D&B cannot, in good faith, now claim that a bona fide dispute

exists as to its continuing violation of the radius restriction limit clause and demand that White

Flint monetize the effects of the default so D&B can "cure".  The time for any such cure has long

since passed. The termination "bell" cannot be "unrung." In claiming that it is entitled to "cure"

the underlying default after the time for such cure has passed and White Flint moved on to

exercise its termination remedy, D&B strains logic and ignores the plain language of the Lease as well as this Court's recognition of White Flint's earlier valid exercise of its termination right.

While the terms of D&B's holdover tenancy are governed by the covenants, provisions and conditions of the Lease as D&B contends, the applicability of those Lease terms is not somehow detached from the reality of the parties' prior actions. As such, at this point in the timeline of events regarding this Lease, the final paragraph of Section 18.1 of the Lease is in no way applicable to D&B's breach of Section 11.3.

2. <u>The Cure Right Cited by D&B is Inapplicable to the Underlying Breach</u>

Even if this Court accepts D&B's contention that the rights set forth in the final paragraph of Section 18.1 of the Lease somehow remain potentially available to D&B during the holdover tenancy following the termination of the leasehold, there is simply no way to legitimately apply Section 18.1 to the situation at hand. As set forth in greater detail in Section 3 of White Flint's Response to D&B's Motion for Reconsideration, Section 18.1 of the Lease is clearly intended to apply to legitimate disputes between the parties relative to amounts payable by Tenant under the Lease.[3]

Moreover, Section 18.1, by its plain language, provides a mechanism for the handling of "a bona fide dispute" regarding monetary defaults under the Lease. Assuming only for the sake of this argument that Section 18.1 has the broader application asserted by D&B (i.e., that it applies to non-monetary defaults like the underlying default by D&B that resulted in the termination of the Lease), Section 18.1 remains inapplicable under the present circumstances.

---

[3] In the interest of being concise, White Flint refrains from reiterating its position in this regard, which is fully set forth in White Flint's Opposition to D&B's Motion for Reconsideration. Suffice to say that the Section is clearly intended to address the handling of a bona fide dispute relative to the amount of a charge assessed by Landlord under the Lease, and not whether a non-monetary breach did or did not occur.

In the many months since the above-referenced correspondence was delivered, numerous communications took place between the parties, including D&B's formal correspondence of August 13, 2013 (attached to D&B's Complaint as Exhibit E).  At no point during any of that communication did D&B dispute White Flint's claim that a violation of Section 11.3 had occurred. As such, there can be no valid claim of a bona fide dispute as to whether D&B was or is in default under the Lease.

D&B's position relative to its breach of Section 11.3 has not changed during the pendency of this litigation.  While D&B has attempted (unsuccessfully) to convince this Court that a host of procedural barriers exist to White Flint's ability to enforce its rights under the Lease (e.g., statute of limitations, laches and waiver) nowhere in any of its many filings in this action (including, most importantly, its Complaint seeking declaratory relief) nor in the oral argument made before the Court, has D&B denied that it breached the radius clause of the Lease. In light of the foregoing, there is not and never has been any bona-fide dispute relative to the default.  In making its argument that a "dispute" exists, D&B is ignoring the fact that the only "disputes" raised in this case concern the enforceability of Landlord's rights and not whether a default exists under the Lease.  Even under D&B's flawed expansive construction of Section 18.1, it has no application to the case at hand.

The language of the paragraph being cited by D&B is prefaced with the words, "provided there is a bona fide dispute…."  Without such a bona fide dispute, even if one assumes for the sake of argument that the final paragraph of Section 18.1 applies to non-monetary defaults of this nature, there is no way that the D&B-cited language of Section 18.1 has anything to do with the issues before the Court.

6

For the reasons set forth above and in White Flint's Counterclaim and Motion for Summary Judgment, White Flint is entitled to possession of its property and is so entitled as a matter of law.

Respectfully submitted,

BRAULT GRAHAM, LLC

*/s/ Albert D. Brault*_____
Albert D. Brault (#01041)

*/s/ James M. Brault*_____
James M. Brault (#03943)
101 South Washington Street
Rockville, Maryland 20850
301-424-1060 (Telephone)
301-424-7991 (Fax)
adb@braultgraham.com
jmbrault@braultgraham.com
*Counsel for Defendant White Flint Mall, LLLP*
*f/k/a White Flint Limited Partnership*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of April, 2014, a true and accurate copy of the foregoing was e-filed and served via the CM/ECF filing system upon:

Edward S. Scheideman, Esq.
Paul D. Schmitt, Esq.
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004

*/s/ Albert D. Brault*_____
Albert D. Brault